

**Casey D. Laffey**
Direct Phone: +1 212 549 0389
Email: claffey@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
+1 212 521 5400
Fax +1 212 521 5450
reedsmith.com

December 12, 2024

Honorable Naomi Reice Buchwald
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 21A
New York, New York 10007

Re:   *Barkhouse v. Dean*, Civil Action No. 1:24-cv-07491-NRB

Dear Judge Buchwald:

We represent the Joint Liquidators ("**Liquidators**") for Affinity Equity International Partners Limited (in liquidation) ("**Affinity**") and Alsen Chance Holdings Limited (in liquidation) ("**Alsen Chance**") (collectively, the "**Debtors**") and write in response to Defendants Kasseem Dean ("**Dean**"), Monza Studios, Inc. ("**Monza Studios**"), and Swizz Beatz Productions Inc.'s ("**Swizz Beatz PI**" and collectively, with Dean and Monza Studios, the "**Defendants**"), December 9, 2024 letter requesting a pre-motion conference authorizing the Defendants to file a motion to dismiss (the "**Letter**"). For the reasons stated below, the Letter's proposed motion to dismiss lacks merit and should be denied if filed. As some of the arguments go to the sufficiency of the Complaint's pleadings, however, the Liquidators intend to exercise their right to amend the Complaint as of right within 21 days of the motion letter. *See* FRCP 15(a)(1)(B).

As the Complaint alleges, the Debtors were embroiled in a massive fraud scheme perpetrated against Malaysian entities 1Malaysia Development Berhad ("**1MDB**") and SRC International Sdn Bhd ("**SRC International**"). In connection with liquidation proceedings pending in the British Virgin Islands, the Liquidators are responsible for recovering assets that several individuals diverted and siphoned from 1MDB and SRC Malaysia, including through the Debtors, and distributing those assets (and any proceeds thereof) to the Debtors' creditors, 1MDB and SRC International. The gravamen of the Complaint is that one of these individuals, international fugitive Jho Low ("**Low**"), gave Defendants $7,300,000 of siphoned 1MDB and SRC International funds for no known consideration or, in the alternative, inadequate consideration (the "**Fraudulent Transfers**"). Low befriended Dean, a celebrity known professionally as "Swizz Beatz," and the two attended lavish, star-studded parties together during the peak of the fraud. Dean has already handed over an Andy Warhol painting he received from Low to the Department of Justice. But he has not denied receiving, nor returned, the Fraudulent Transfers from Low, putting him in stark contrast to the many other celebrities who voluntarily disclosed and turned over their gifts from Low upon learning of their provenance. Similarly, the Letter does not contend that there, in fact, was consideration—let alone adequate consideration—for the Fraudulent Transfers. Indeed, it was Dean's refusal to respond to the Liquidators' pre-suit inquiries for an explanation that precipitated this action.

The Letter follows this pattern of silence, failing to acknowledge Dean's receipt of the Fraudulent Transfers and arguing only that the Liquidators lack standing to sue, assert time barred claims, and have otherwise failed to state a claim while raising several factual inquiries improper for a motion to dismiss. Assuming the truth of the Complaint's allegations, the Liquidators' claims must be sustained. *See Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. Mar. 4, 2020).

Honorable Naomi Reice Buchwald
December 12, 2024
Page 2



**A.     Article III Standing**: The Letter challenges the Liquidators' Article III standing on the purported and incorrect basis that they are bringing claims on behalf of the debtors and not their creditors. The Liquidators have Article III standing to pursue their claims under both the British Virgin Islands Insolvency Act (the "**Act**") and Chapter 15. The Act authorizes a duly appointed liquidator to act "as an officer of the Court" and charges the liquidators with taking possession of, protecting and realizing the assets of the liquidated company, and distributing the assets (or proceeds thereof) in accordance with the Act. Act §§ 184(1), 185. It further charges the Liquidators with distributing the realized assets to creditors of the insolvent company. *Id.* § 207(1); Compl. ¶ 4. Where, as here, the Liquidators are vested with authority to assert causes of action on behalf of the Debtors' creditors, they have standing to pursue state law fraudulent transfer claims independent from the Bankruptcy Act. *See In re Hellas Telecommunications (Luxembourg) II SCA,* 524 B.R. 488, 523-524 (Bankr. S.D.N.Y. 2015).

**B.     Prudential Standing**: The Letter next argues that the Liquidators lack prudential standing under the doctrine of *in pari delicto*—a fact intensive inquiry that typically "cannot be determined on a motion to dismiss." *Levin v. Javeri (In re Firestar Diamond, Inc.)*, 654 B.R. 836, 884 (Bankr. S.D.N.Y. 2023) (summarizing cases). In any event, the Liquidators have prudential standing to pursue their claims because, as explained above, they are brought on behalf of, and for the benefit of, debtors' creditors. Moreover, while the Liquidators do not dispute that *in pari delicto* typically precludes parties from suing for wrongdoing in which it participated, the adverse interest exception, which "rebuts the usual presumption that the acts and knowledge of an agent acting within the scope of employment are imputed to the principal" where the agent has "totally abandoned" the principal's interests, applies here. *Mediators, Inc. v. Manney (In re Mediators, Inc.)*, 105 F.3d 822, 827 (2d Cir. 1997). The Complaint alleges that the debtor companies, Affinity and Alsen Chance, and the source of the funds, 1MDB and SRC International, received <u>no</u> benefit from the fraudulent transfers. To the extent Defendants provided any consideration in exchange for the Fraudulent Transfers, it inured entirely to Low and his accomplices. Compl. ¶¶ 95-104.

**C.     Statute of Limitations**: Though the Letter states "the DCL Claims are Time-Barred," it does not otherwise argue that Count 1 of the Complaint (intentional fraudulent conveyance) is time barred and therefore waives any such argument. Counts 2 (constructive fraudulent conveyance) and 3 (unjust enrichment) of the Complaint are moreover timely. While the Liquidators do not dispute Defendants' claim that the applicable statute of limitation for these claims is six years, the adverse domination doctrine applies to equitably toll the accrual date of the claims until the director-fraudsters were removed from their positions. *See, e.g.*, *Levin v. Nirav Deepak Modi (In re Firestar Diamond, Inc.)*, 634 B.R. 265, 294 (Bankr. S.D.N.Y. 2021). As pled, Malaysia's former prime minister indirectly controlled 1MDB and used his administration to thwart investigations into 1MDB until at least May 2018 when he was ousted. Compl. ¶¶ 3, 108-110. Moreover, the Liquidators were not appointed as liquidators of Affinity and Alsen Chance until 2021 and 2023, respectively. *Id.* ¶¶ 6, 11. And because of the Debtors' lack of corporate records, the Liquidators only learned of the transfers after conducting extensive third party discovery, receiving Affinity's bank statements in February 2022 and Alsen Chance's bank statements in December 2022. *Id.* ¶¶ 113-14. Accrual on the Liquidators' claims therefore did not begin until at least those dates.

Moreover, the Bankruptcy Code extends the time by which a debtor may commence an action by two years after an "order for relief." 11 USC § 108(a). Chapter 15 representatives such as the Liquidators may take advantage of this extension in a Chapter 15 adjacent proceeding so long as their claims have not expired before their filing of a Chapter 15 petition. *See Bankr. Estate of Norske Skogindustrier ASA v.*

Honorable Naomi Reice Buchwald
December 12, 2024
Page 3



*Cyrus Capital Partners, L.P.*, 629 B.R. 717, 739 (Bankr. S.D.N.Y. 2021). Affinity filed its Chapter 15 petition on August 31, 2022, and Chapter 15 recognition was granted on October 4, 2022. The claims brought on behalf of Affinity's creditors therefore would not have expired until October 4, 2024. Alsen Chance filed its petition on February 15, 2024, and recognition was granted on March 28, 2024. Thus, the claims brought on behalf of Alsen Chance's creditors would not have expired until March 28, 2026.

D.  **Failure to State a Claim.** The Liquidators properly pled their claims:

Intentional Fraudulent Conveyance: The Liquidators sufficiently pled intentional fraud by pleading several badges of fraud sufficient to infer fraudulent intent on behalf of the insiders/transferors. *In re Liberty Bridge Capital Mgmt. GP, LLC*, 663 B.R. 409, 428 (Bankr. S.D.N.Y. 2024). The Complaint alleges that Debtors "did not receive any money back from" any of Defendants' bank accounts or "any other consideration" from Defendants in exchange for the fraudulent transfers, the insiders fled Malaysia shortly after the Fraudulent Transfers, Low was a "close personal friend" of Dean, and the transfers were at least partially responsible for 1MDB and SRC international becoming insolvent. Compl. ¶¶ 27, 107, 119-123. Moreover, the Complaint does not allege that "at least one transfer was an investment in the production of music." Letter at 3. It merely alleges that a statement for Alsen Chance's bank account states "investment in music production," before noting that the Alsen Chance Account "has not received any investment payments from" any of the Defendants. Compl. ¶ 96.

Constructive Fraudulent Conveyance: The Liquidators also pled each of the elements necessary to state claims under the former New York Debtor Creditor Law §§ 273-275. The Debtors were the alter ego companies of Low and the other insiders who fraudulently funded their scheme using 1MDB and SRC International funds. Compl. ¶¶ 50-93; *In re Liberty Bridge Capital Mgmt. GP, LLC*, 663 B.R. at 419-23. Accordingly, though the Debtors (through Low and the insiders) ultimately effected the fraudulent transfers to the Defendants, 1MDB and SRC International were the originating transferors whose businesses were jeopardized, in part, because of the transfers.

Unjust Enrichment: Finally, the Complaint does not "merely recite the undisputed bald elements of" unjust enrichment but rather alleges that (1) Defendants unjustly received $7,300,000 from the Debtors without providing fair consideration to the Debtors, Compl. ¶¶ 95-104, 119-122; (2) that such enrichment deprived Debtors' creditors of their ability to collect on money owed to them by the debtor entities, *id.* ¶ 139; and (3) that equity and good conscience require Defendants to forfeit the money for these same reasons, *id.* ¶ 140. These pleadings are sufficient to state a claim for unjust enrichment. *See, e.g.*, *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001).

For the foregoing reasons, Defendant's proposed motion to dismiss fails as a matter of law. As stated above, however, the Liquidators intend to exercise their right to amend their complaint pursuant to FRCP 15(a)(1)(B) on or before December 30, 2024. We thank the Court for its attention to this matter.

Respectfully,

/s/ *Casey D. Laffey*
Casey D. Laffey